Samuel A. Spiegel, J.
This is a motion by defendants for summary judgment dismissing the complaint.
Plaintiffs in this action are tenant occupants in the apartment building at 118 East 60th Street, New York City, on and prior to April 24, 1969. The owner of the building, Bonner Realty and Construction Corp. (Sponsor), had indicated prior thereto that it wished to convert the apartment house into a co-operative apartment building. The necessary offering statement, containing the plan of co-operative organization, was accepted for filing *711 by the Attorney-General of the State of New York, on the above date. Said plan was later declared effective by the Sponsor, and the plaintiffs herein seek a declaration, inter alia, that the plan was invalid, that all purchase agreements executed pursuant thereto should be rescinded and defendant enjoined from offering the stock for sale. The plan submitted to the tenants called for the eventual sale of the building to a co-operative corporation which would offer the tenant occupants the right to buy shares of stock, the amount of which was allocated in relation to the residential units occupied by the tenants. The price of the stock and the cost of each apartment varied from apartment to apartment in accordance with a schedule attached to the plan.
The offering statement originally provided that the Sponsor, at his option, could declare the plan effective if 30% of the apartments were sold to the occupying tenants. Each tenant occupant was granted an exclusive right to purchase the shares allocated to his apartment for a period of 90 days at a discount of 10% below the cash purchase price shown on the schedule.
On June 5, 1969 the offering statement was amended, apparently because of the enactment of the New York City Kent Stabilization Law (Administrative Code of City of New York, § YY51-1.0 et seq.) which became effective on May 6,1969. The amendment provided that the plan would not become effective until 35% of the tenant occupants had signed the purchase agreements. The amendment also extended the tenants’ right to purchase at the discount price for 60 days thereafter.
On August 5, 1969 there was another amendment which granted an additional 45 days to the tenant occupants to purchase at the preferred price.
On October 25, 1969 the offering statement was amended for the third time. The Sponsor, by this amendment, gave notice that 35% of the tenant occupants had signed purchase agreements and, accordingly, declared the offering statement effective as of November 7, 1969. This final amendment was reviewed and accepted by the Attorney-General.
Plaintiffs contend that the defendants’ present motion for summary judgment must be denied because (a) some tenants agreed to purchase as the result of illegal tactics used by the Sponsor, (b) tenants were included who do not qualify, (c) certain tenants received discriminatory inducements to purchase and (d) the plan and offering statements are misleading and have material omissions.
A careful review of the purchase agreements executed by the tenants which were submitted to the court by the Sponsor, dis *712 closes that as of October 25, 1969, 77 of the 213 tenants in the building had signed purchase agreements. Thus, as of that date, 36 1/10% of the tenant occupants had signed up. Only 2 of the plaintiffs .were included in those 77 buyers, and if we were to exclude their agreements from the total count, the Sponsor still had received signed agreements to purchase from 75 noncomplaining tenants, or 35 2/10%. This percentage was still sufficient to satisfy the requirements of the plan.
Subsequent to October 25, 1969, 11 other plaintiffs agreed to buy the stock allocated to their apartments, plus 18 tenants who are not parties in this action. Therefore by November 7, 106 tenants, representing 49 8/10% of the occupants of the building had signed purchase agreements. Even assuming, arguendo, that plaintiffs were misled and should be afforded the right to rescind their agreements, the total number of tenant purchasers who are satisfied to accept the plan, and to not rescind their agreements, is far more than necessary for the Sponsor to validly declare the plan effective.
The plaintiffs claim that the case of Gilligan v. Tischman Realty & Constr. Co. (283 App. Div. 157, affd. without opn. 306 N. Y. 974) is controlling herein in that, under the ruling of that case, the plaintiffs are entitled to bring a class action to declare the co-operative plan invalid on behalf of themselves and all other eligible tenants in the building. The case they rely upon is substantially different from the present case, both as to the facts and applicable statutes. The building involved in Gilligan (supra) was a building constructed prior to 1946 and, therefore, a truly rent-controlled apartment house, subject to the Emergency Housing Bent Control Law (L. 1946, ch. 274, as amd.). This statute and the implementing regulations were designed to protect tenants in controlled housing from eviction, except on the very limited grounds set forth in the statute at that time. In Gilligan (supra) the primary question raised was whether an owner of a controlled multiple dwelling could cut off the possessory rights of tenants by the device of transferring the title to. a corporation under a so-called co-operative plan and, thereafter selling the rights to the apartments to strangers ‘ ‘ without offering to the tenants the shares allocated to their apartment. ’ ’
Plaintiffs, herein, cannot claim that their situation is similar to that faced by the tenants in Gilligan (supra). The building involved herein was constructed in 1964 and was not subject to the rent control laws in force at that time. I find that the Bent Stabilization Law of the City of New York, which was enacted after the offering statement had been filed, is not applicable. *713 However, even if the co-operative plan offering came under the provisions of that code, there has been no showing that the sponsor failed to meet the minimum requirements necessary to declare the plan effective.
No plaintiff purchaser has come forth with a clear-cut statement that he or she was induced or discriminated against in connection with his or her purchase. The claims of discrimination and inducement are vague and unsupported. Plaintiff Ruggier’s affidavit makes the claim upon “ information and belief.” The tenants’ committee which has been in existence since the summer of 1969 has been to the Attorney-General’s office with their alleged complaints. Significantly, the Attorney-General has taken no action.
The plaintiffs likewise rely on Judson v. Frankel (279 App. Div. 372). In that case the co-operative scheme was a device to evade and circumvent the emergency rent control laws intended for the protection of tenants. It cannot be held upon this submission that the plan was so permeated with fraud and illegality in its early presentation and thereafter to warrant a declaration that the plan itself was illegal or misleading.
We are confronted with a situation where the plaintiffs seek to rescind all contracts and void the entire plan. This they clearly cannot do. To permit this would allow a small handful of tenants to defeat the desires of the other tenants who far outnumber the plaintiffs. As stated in Gaynor v. Rockefeller (15 N Y 2d 120, 129): “ a class action may not be maintained where the wrongs asserted are individual to the different persons involved and each of the persons aggrieved ‘ may determine for himself the remedy which he will seek ’ and may be subject to ‘ a defense not available against others ’ ”. (See, also, Coolidge v. Kaskel, 16 N Y 2d 559; Brenner v. Title Guar. & Trust Co., 276 N. Y. 230.) It appears that under the circumstances present in this case the plaintiff cannot maintain a class action. The plan was effective without them. They cannot now come forth and seek to upset the agreements which the other tenants have bargained for and accepted.
It may be possible that some of the individual plaintiffs who executed purchase agreements might be able to prove that the Sponsor was guilty of using illegal and oppressive tactics against them individually and therefore they could be entitled to rescind the agreements that they individually entered into and also seek damages. Parenthetically, however, it is noted that the plaintiff purchasers now assert that they want to withdraw their cause of action for rescission of the contracts. Plaintiffs are apparently not seeking individual relief at this time. *714 Summary judgment is granted, dismissing the complaint in its entirety. However, this is without prejudice to any rights or remedies the plaintiffs may have individually.